UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAPITAL MACHINE COMPANY, INC., and INDIANA FORGE, LLC,<br>　　*Plaintiffs*,<br><br>　　*vs.*<br><br>MILLER VENEERS, INC., *et al.*,<br>　　*Defendants*. | )<br>)<br>)<br>)　1:09-cv-00702-JMS-TAB<br>)<br>)<br>)<br>) |

### ORDER

Presently before the Court in this patent infringement action is Plaintiffs Capital Machine Company, Inc. and Indiana Forge, LLC's Motion for Preliminary Injunction. [Dkt. 89.][1] Plaintiffs seek to preliminarily enjoin Defendant Miller Veneers, Inc. ("Miller"), from any further alleged infringement of one of the six patents at issue in this action, Patent No. 5,819,828 (the "'828 Patent"), as Miller creates wood veneers.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374 (2008).

---

[1] Despite Plaintiffs' suggestion to the contrary, [*see* dkt. 91], the Court finds that the opening brief, response, reply and sur-reply have adequately informed the Court, so oral argument on this motion is unnecessary. Plaintiff's request for oral argument is **DENIED**.

As Plaintiffs have failed to establish the latter three necessary elements for a preliminary injunction, the Court declines to address the first element of required proof—the likelihood of success on the merits at trial.[2]   Given the failures, no preliminary injunction will issue.

Plaintiffs have failed to present sufficient evidence that they will likely suffer irreparable harm absent a preliminary injunction.  The Federal Circuit—whose precedents control here, *see* 28 U.S.C. § 1295—has determined that an unexplained delay in seeking a preliminary injunction "militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief."  *High Tech Medical Instrumentation v. New Image Indus.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (finding delay of seventeen months too long to necessitate a preliminary injunction and collecting cases also held to be too long, including one involving a seven-and-a-half month delay).  *See also Panduit Corp. v. Band-It-Idex, Inc.*, 2000 WL 1121554, *24 (N.D. Ill. 2000) ("[I]f the harm was so bad, why would one wait to seek a remedy?").  Plaintiffs waited over a year into this litigation before requesting a preliminary injunction.  Indeed, according to an unrebutted argument from Miller, Plaintiffs had known about the alleged infringement since March 2009.  [*Compare* dkt. 97 at 23, *with* dkt. 105 at 15-16.]

---

[2] Had the Court reached the issue of the likelihood of success, the Court would been required to resolve several vigorous challenges to the merits of Plaintiffs' claims.  For example, Plaintiffs argue *res judicata* and collateral estoppel apply with respect to the validity of the '828 Patent, [dkt. 90 at 4].  Miller has argued that those doctrines cannot apply because the patent at issue here was not the same patent at issue in the prior proceedings, *see Brand v. Miller*, 487 F.3d 862 (Fed. Cir. 2007).  Plaintiffs have offered no rejoinder to Miller's assertion, and they do not even reiterate the argument in their Reply.  [*See* dkt. 105.]  Indeed, if Miller's assertion has merit, it is difficult to understand why Plaintiffs ever advanced the argument in the first place.

Additionally, the Court notes that Plaintiffs' opening brief failed to address what they acknowledged to be inevitable arguments about the patent's validity (which is hotly contested), waiting until Miller raised the issue in its Response.  Even though that tactic might have been technically proper, *see Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377-78 (Fed. Cir. 2009), it necessitated a surreply—an extra round of briefing discouraged in this Court, *see* L.R. 7.1.  In the future, Plaintiffs are strongly encouraged to address all likely counterarguments from the outset.

Although they say that they needed to conduct discovery before they could be sure they had sufficient evidence to request a preliminary injunction, [*see* dkt. 105 at 16], they didn't request expedited discovery—unlike many other litigants who are concerned about truly immediate and irreparable injury. And indeed, the discovery that they cited in their briefing appears to have been taken several months before they filed the instant motion. [*See, e.g.*, dkt. 89-4 (attaching a deposition transcript from November 2009).]

Setting aside the inconsistency of irreparable harm with Plaintiffs' delay in requesting injunctive relief, Miller has also presented strong defenses to the particular irreparable harms that Plaintiffs claim to suffer. As to the argument that a violation of a patent is inevitably irreparable, Miller has argued—and Plaintiffs haven't disputed—that the Federal Circuit has rejected that position. [*Compare* dkt. 97 at 24 (citing *Ill. Tool Works, Inc., v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990) ("Application of a concept that every patentee is always irreparably harmed by an alleged infringer's pretrial sales would...disserve the patent system.")), *with* dkt. 105 at 17 (not addressing Miller's authority).] To the extent that Plaintiffs argue that losing the specific ability to exclude a competitor qualifies as irreparable injury because it results in a loss of reputation in the marketplace, [*see* dkt. 90 at 22], the Court preliminarily finds, based on the unrebutted evidence, that Plaintiffs and Miller aren't actually competitors. [Dkt. 97-1 ¶17.] The Court has no evidentiary basis on which to make the leap of faith suggested by Plaintiffs that the closure of the seventeen competing veneer mills referenced in Plaintiffs' Reply [dkt. 105 at 17] is due to Miller's use of Plaintiffs' technology. Our nation is in the midst of one its worst economic re-

cessions in at least the past century.[3]  That and other reasons may well be at the root of the other veneer mills' closings.  Finally, insofar as Plaintiffs maintain that they will have difficulty in establishing damages because they don't license their patent rights to anyone else—and thus lack a precedent for licensing fees—and because it is unclear exactly how much the '828 technology increases both Miller's quantity and quality of production, the Court notes that Plaintiffs have failed to respond to Miller's contention that the uncertainty here is no greater than that attendant in many other intellectual patent cases.  [*Compare* dkt. 97 at 25, *with* dkt. 105 at 17.]

With respect to the balance of the equities, the Court finds that they do not support the issuance of a preliminary injunction—a "drastic and extraordinary remedy that is not to be routinely granted."  *Intel Corp. v. ULSI Sys. Tech.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993) (citations omitted).  As the Federal Circuit has noted, "the hardship on a preliminarily enjoined manufacturer…can be devastating," and accordingly "a court … remain[s] free to deny a preliminary injunction, whatever…the showing of likelihood of success, when equity in the light of all the factors so requires."  *Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990); *see also Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Systems*, 132 F.3d 701, 707-08 (Fed. Cir. 1997) (permitting courts to consider harm to defendant in the context of a preliminary injunc-

---

[3] As part of their argument that Millers and Plaintiffs are competitors and that Miller's increased sales drove out of business seventeen of Plaintiffs' direct competitors, Plaintiffs proffered a spreadsheet of Miller's tax return information.  [*See* dkt. 105-1.]  Miller has objected that the spreadsheet is actually misleading for several reasons, including because it mixes and matches different types of figures.  [Dkt. 118 at 12 n. 8.]  Given the Court's preliminary findings above, the Court need not resolve Miller's charges of misrepresentation.  But, to the extent that those charges have merit, Plaintiffs are strongly cautioned to scrupulously present only accurate data to the Court in the future.  *See* Fed. R. Civ. Pro. 11.

tion).[4]  Here, Miller has presented evidence that the costs of complying with the preliminary injunction will be great:  Because Miller has already sold off or retooled all of its machines that it had used before converting to the new, allegedly infringing system in 2004, Miller would need to cease production for at least six months to revert back to its old process. [Dkt. 97-1 ¶¶19-20.]  By contrast, declining to issue a preliminary injunction will only subject Plaintiffs to whatever hardship that they have been content to endure during the long period in which they knew about the alleged infringement but didn't seek immediate Court assistance, as discussed above.

Finally, the evidence in the record establishes that issuing the preliminary injunction would be contrary to the public interest.  Miller has supplied an affidavit that the preliminary injunction Plaintiffs seek will require it to furlough many of its workers for at least six months, while it retools its production process.  [Dkt. 97-1 ¶20.]  Given the state's high unemployment rate, those workers may not be able to find interim employment, an outcome that might result in their inability to remain current on their mortgage or rent payments.  And to the extent that the furloughed workers would qualify for unemployment compensation, they would further draw upon a system that is already strained to the limit.  *See* Mary Beth Schneider & Bill Ruthhart, "Deal Delays Tax Hike on Business Until 2011," *Indianapolis Star*, March 13, 2010 at A1 (explaining that Indiana's unemployment compensation fund expects to borrow up to $3 billion from the federal government to remain solvent this year).  While Plaintiffs make arguments that the furlough won't actually be required, the Court finds those arguments speculative in the face of the clear affidavit evidence.

---

[4] Of course, should patent infringement ultimately be found to have occurred, those considerations fall out.  "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Int'l v. AMF, Inc.*, 782 F.2d 995, 1003 n. 12 (Fed. Cir. 1986) (discussing permanent injunction).

Accordingly, Plaintiffs' Motion for Preliminary Injunction [dkt. 89] is **DENIED**.

07/28/2010

                                    Hon. Jane Magnus-Stinson, Judge
                                    United States District Court
                                    Southern District of Indiana

**Distribution via ECF only:**

Cynthia A. Bedrick
MCNEELY STEPHENSON THOPY & HARROLD
cabedrick@msth.com

Clifford W. Browning
KRIEG DEVAULT LLP
cbrowning@kdlegal.com

Courtney E. Curtis
OVERHAUSER & LINDMAN, LLC
ccurtis@overhauser.com

Jennifer M. Frasier
MCNEELY STEPHENSON THOPY & HARROLD
jmfrasier@msth.com

J. Lee McNeely
MCNEELY STEPHENSON THOPY & HARROLD
jlmcneely@msth.com

Paul B. Overhauser
OVERHAUSER & LINDMAN, LLC
poverhauser@overhauser.com

Katherine A. Petralia
MCNEELY STEPHENSON THOPY & HARROLD
kapetralia@msth.com

Brady J. Rife
MCNEELY STEPHENSON THOPY & HARROLD
bjrife@msth.com