UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| **INDIANA FORGE, LLC**, and **CAPITAL MACHINE CO., INC.**, | ) ) ) |
| Plaintiffs, Counterclaim defendants, | ) ) |
| *vs*. | ) ) |
| **MILLER VENEERS, INC.**, | ) CAUSE NO. 1:09-cv-702-JMS-TAB ) |
| Defendants, Counterclaim plaintiffs, | ) ) |
| *vs*. | ) ) |
| **WILLIAM L. KOSS**, | ) ) |
| Counterclaim defendant. | ) |

**ENTRY**

**William L. Koss's Motion to Dismiss and Renewed Motion to Dismiss**

Plaintiff Indiana Forge, LLC, owns six patents covering apparatuses and methods used in the wood-veneer-cutting industry, Supplemental Complaint [dkt. 134] (AComplaint@) && 2, 12; *Brand v. Miller*, 487 F.3d 862 (Fed. Cir.), *cert. denied*, 552 U.S. 1038 (2007), and plaintiff Capital Machine Co., Inc., is the exclusive licensee of the patents in the United States and its territories, *id*. & 13. Indiana Forge and Capital Machine claim that the defendants have infringed and are infringing the patents. Their complaint is in three counts: direct infringement, inducement of infringement, and contributory infringement.[1] The defendants consist of four business entities; four individuals who managed, controlled and/or owned one of the entities, Miller Veneers; and

---

[1] The Court recently granted the parties= stipulated dismissal of a fourth count, for unjust enrichment. [Dkt. 129, 133].

one individual, Robert D. Brand, who is the sole named inventor on all of the patents.[2]  The defendants counterclaimed against the plaintiffs and a third individual, William L. Koss, whom they allege is the APresident and principal@ of Capital Machine and a Aprincipal member@[3] of Indiana Forge and was Adirectly involved in the preparation and prosecution of each of the patent applications.@  Defendants= Second Amended Answer [dkt. 76] (AAnswer@), Affirmative Defenses & 4, Counterclaims && 3, 7.  The counterclaims are in six counts, one for each of the six patents, and allege that the defendants have not and are not infringing the patents and that each patent is unenforceable due to the counterclaim defendants= inequitable deceptive conduct before the Patent Office.  The defendants seek dismissal of the Complaint; declarations that the patents are invalid, void, and unenforceable, and have not been infringed; and an award of attorney=s fees and costs.  Now before the Court is counterclaim defendant William Koss=s motion to dismiss the defendants= claims against him.

The plaintiffs= six patents relate to machinery and methods used to attach Aflitches@ C longitudinally cut halves or quarters of logs C to veneer-slicing machines.  *Id*. & 17.  The economic advantages of the patented methods are, in part, that there is less waste produced from tapered flitches, *i.e.*, flitches that are flared toward one end due to the wider base of a tree trunk.  Traditionally, flitches are mounted with their cut faces down, flush against the flat surface of a movable holder called a staylog.  The staylog moves the rounded peripheral face of the flitch across a knife that slices sheets of veneer from the flitch.  The flitch is mounted to the staylog by

---

[2] Mr. Brand allegedly invented the patented methods and apparatuses while employed by plaintiff Capital Machine.  He now works for defendant Miller Veneers.

[3] In the briefing, Mr. Koss is also described as a part owner of Indiana Forge.  Mr. Koss is also described as a principal shareholder of Capital Machine.

clamps, or Adogs,@ on the staylog that grip the flitch along two channels that are cut longitudinally down the length of the cut face of the flitch. Indiana Forge=s patented methods are intended to overcome two problems with this traditional method of producing veneers from flitches. First, because trees tend to flare at the base of their trunks, the flush mounting of a tapered flitch on a staylog presents an uneven surface to the slicing knife. As the staylog moves the flitch across the knife, the first slices will be made in the taller flared, or conical, end of the flitch, yielding only small and narrow pieces of veneer that are unusable. These initial slices gradually increase in size as the cutting plane moves down the conical flared end of the flitch during successive passes until eventually the flare is removed and the cutting plane reaches the entire length of the flitch. These initial cuts produce only waste slices, yet often the best veneer wood is in the base of a tree. The second problem is that the amount of material removed from the flitch in order to cut the two gripping channels along the bottom (cut face) of the flitch often causes the flitch to lose rigidity and flex during the slicing process, producing non-uniform and unusable veneer slices.

The plaintiffs= patents describe methods of mounting a flitch to a staylog by replacing the two deep gripping channels traditionally cut down the length of a flitch with a pattern of either drilled holes or sawn pockets into which either gripping pins or traditional dogs, respectively, are inserted from the staylog in order to hold the flitch. This method, which leaves substantially more wood in place on the flat bottom (cut face) of the flitch, eliminates the flexing at the edges when under pressure from the slicing knife. The patents also describe mounting a tapered flitch to a staylog so that the outer, peripheral slicing surface of the flitch is presented parallel to the slicing knife, thus eliminating the higher conical profile at the end of the flitch. This is accomplished by, instead of the flat cut face of a flitch being mounted flush on the staylog, the narrower or thinner

end of the flitch being held elevated by the pins or dogs to a height necessary to present an even, flat surface to the slicing knife. This method reduces the wasted initial cuts of the traditional method and allows more of the best veneer wood at the base of a tree to be harvested.[4]

Mr. Koss's motion argues that the counterclaims against him should be dismissed because the defendants have failed to plead their claims of inequitable conduct with the specificity required by Fed. R. Civ. P. 9(b) and they have failed to state a claim under Rule 12(b)(6) because they have not pled any adverse legal interest, case, or controversy involving him.

### Rule 12(b)(6) Case or Controversy

Mr. Koss argues that, because it is undisputed that he has no ownership interest in the patents, there is no adverse legal interests between him and the defendants regarding the declaratory-judgment counterclaims asserting that the patent are invalid and/or unenforceable. Because he has neither the ability nor the motivation to defend the validity of the plaintiffs' patents, he argues that the declaratory claims against him should be dismissed for failure to state a claim.

---

[4] The patents cover the following concepts:

- Cutting multiple spaced holes in a cut section of a log, called a "flitch," to provide places for the flitch to securely attach to a veneer slicer;

- Mounting a flitch on a veneer slicer during the veneer slicing process; and

- If a flitch is tapered (because trees tend to be wider at the bottom than at the top), mounting the flitch on a veneer slicer so the veneer cutting surface of the flitch is parallel to the veneer slicing knife.

Complaint [dkt. 1] & 13.

The defendants respond that Mr. Koss is named not for the purpose of determining the validity or enforceability of the patents *per se*, but in order that they may assert liability against him for an award of attorney's fees under 35 U.S.C. § 285, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The defendants assert that the plaintiffs' patents are unenforceable due to inequitable conduct before the Patent Office by Mr. Koss and Capital Machine. Answer, Affirmative Defenses ¶ 4, Counterclaims ¶¶ 9, 10.[5] They allege that Mr. Koss, and others in privity with him, "directed and/or controlled what information was supplied to the U.S. Patent Office" concerning the patents and was an "individual associated with the filing and prosecution" of the patents, and that his actions led to the issuance of the patents. Answer, Affirmative defenses ¶ 4, Counterclaims ¶¶ 7, 8. The defendants allege that Mr. Koss "grossly and wilfully ignored" his duty of candor and good faith owed to the Patent Office; *id.*, Counterclaims ¶ 8, "engaged in a pattern of conduct to deceive the U.S. Patent Office", *id*. ¶ 10; and that these actions led to the issuance of the patents, *id*. The defendants ask for an award of attorney's fees to be imposed jointly and severally against the plaintiffs and Mr. Koss. *Id*., ¶ D of the prayers in each Count.

The defendants are entitled to have Mr. Koss named as a defendant. In *Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000), the district court dismissed the plaintiff entity's infringement suit and ordered it to pay the defendant's attorney's fees under 35 U.S.C. § 285. Fearing that the plaintiff might be unable to pay the award, the defendant moved to amend its answer to add the plaintiff's president and sole shareholder, Nelson, as a party and also moved to amend the fee

---

[5] Identical allegations are made in each of the six counterclaim counts. The Court's citations to the allegations in Count I incorporate the same allegations made in the other counts.

award to include Nelson as a liable party. The district court granted both motions simultaneously, immediately rendering Nelson jointly and severally liable for the attorney=s fee award. The Supreme Court reversed the Federal Circuit=s affirmance of the fee-award amendment, holding that Nelson was entitled, under Fed. R. Civ. P. 15 and constitutional due process, to an opportunity to contest the liability claim against him. The district court=s order granting Nelson=s addition as a party was not contested below or addressed by the Court.

In addition to *Nelson*, the defendants rely on *Armament Systems and Procedures, Inc.*, No. 06-C-833, Decision and Order, 2007 WL 2572304 (E.D. Wis., Sept. 5, 2007), which held:

> . . . a successful defense of inequitable conduct can involve the individual who *committed* the inequitable conduct when it comes time to consider an award of attorney=s fees under 35 U.S.C. ' 285. This was precisely the scenario in *Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000) . . . .
>
> \* \* \*
>
> Thus, the mere fact that Parson [the third party] may not enforce the patents in suit in his own name does not mean he cannot be named as a party when the defendants raise inequitable conduct as a defense to the enforceability of those patents. So long as he is given notice and a chance to defend himself, I conclude that Parsons is a proper party to a declaratory judgment action claiming the patents in suit are unenforceable due to Parsons= own inequitable conduct; in other words, the defendant=s defense of unenforceability against Parsons and Armament arise out of the same transactions or occurrences, which means Parsons may be permissively joined under Rule 20, and thus named as a counterclaim defendant under Rule 13(h).

*Id.*, 2007 WL 2572304, \*2, 3. The defendants cite additional decisions from the Federal Circuit and district courts holding that third-party participants in inequitable conduct may be named as defendants for purposes of liability under ' 285. Mr. Koss=s argument that these decisions, including *Armament Systems* and *Nelson*, were Aeffectively overruled@ by the Supreme Court=s later decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), and the Federal Circuit=s later decision in *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294 (Fed.

Cir. 2009), is unpersuasive because neither case addresses a third-party's liability under § 285 as a basis for status as a defendant and neither decision includes any suggestion that it was overruling recent precedents.

The present case presents the same procedural stature as *Armament Systems*. The defendants allege that Mr. Koss personally engaged in and/or caused others to engage in deceptive conduct before the Patent Office which led to the issuance of the patents. They also claim that the extent of Mr. Koss's and the plaintiffs' deception makes this an exceptional case under 35 U.S.C. § 285, warranting an award of attorney's fees against all three jointly and severally.[6] Because these allegations, if proved, could support an award of fees against Mr. Koss personally, he is a proper defendant on the counterclaims. And because Mr. Koss's personal involvement in directing and controlling the deception before the Patent Office is specifically alleged, his conduct and knowledge at the time will likely be the primary focus of the defendants' evidence and argument that the plaintiffs' patents are void, invalid, and/or unenforceable. Mr. Koss's status as a defendant now is thus warranted because the content of his showing on the question of a § 285 award will substantially overlap, if not be identical with, the showing that he and the plaintiffs will make defending against the defendants' case in chief regarding unenforceability.

---

[6] The defendants also claim that the plaintiffs' and Mr. Koss's pursuit of the litigation, which they know to be meritless due to their earlier deception of the Patent Office, is another ground for an award of fees. Mr. Koss argues that the defendants failed to allege that he directed, instigated, and/or controlled the filing of this suit and its continued litigation. Because sufficient basis exists to name him as a counterclaim defendant based on the allegations of deceit before the Patent Office and, thus, to deny the motion to dismiss, the Court need not address this argument.

Mr. Koss argues that, under *Armament Systems*, he may be added as a defendant only after it is found that (1) he committed inequitable conduct, (2) the patents are invalid as a result, (3) he directed and controlled the patent owner at the time of the inequitable conduct, (4) the patent owner is unable to satisfy a ' 285 award, and (5) he now directs and controls the current patent owner.  The Court finds no such holding or teaching in *Armament Systems*.  Mr. Koss must be afforded an opportunity to be heard on the issue of his liability for an award under ' 285 and many, if not most, of the facts and arguments relevant to his liability are likely to be relevant to the defendants= counterclaims and to be presented at trial.  While the Court will decide the questions of whether to make an award under ' 285, the amount of such an award, and Mr. Koss=s liability therefor, it sees little reason to artificially bifurcate the proceedings and hearings in this context of substantial overlap of evidence and argument.  Additional arguments and evidence regarding Mr. Koss=s liability that will not be relevant to the defendants= counterclaims may be heard subsequently to the trial, if necessary.[7]

Mr. Koss=s motion to dismiss the counterclaims against him for failure to state a claim under Rule 12(b)(6) is denied.

---

[7] In addition, the Court might be bound by facts found by the jury on the counterclaims that are also determinative of, or relevant to, the ' 285 issue, *see*, *Artis v. Hitache Zosen Clearing, Inc.*, 967 F.2d 1132, 1137 (7th Cir. 1992), and the Court might desire to use the jury in an advisory capacity regarding any facts that are relevant only to the ' 285 issue, see Fed. R. Civ. P. 39(c).  There is also the question, unaddressed in *Nelson*, whether issue preclusion would bar Mr. Koss from contesting the jury=s findings on common relevant facts.  *See*, *Nelson*, 529 U.S. at 472 n. 5.  Thus, at trial might be Mr. Koss=s only effective opportunity to contest the facts relevant to his liability for an award of fees.

**Rule 9(b), Pleading Inequitable Conduct**

Fed. R. Civ. P. 9(b)'s requirement that the circumstances constituting fraud must be pled with particularity applies to claims of inequitable conduct before the Patent Office: "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO [Patent and Trademark Office]." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). The elements of an inequitable-conduct claim or defense are "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Id*. n. 3. The state of mind, or scienter, for inequitable conduct is "(1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Id*. at 1327. Although knowledge and intent may be alleged generally, the pleading "must include sufficient allegation of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id*. at 1328-29.

The defendants claim that the six patents are unenforceable due to inequitable conduct before the Patent Office by Mr. Koss and Capital Machine when the patent applications were filed. Answer, Affirmative defenses ¶ 4, Counterclaims ¶ 9. They allege that Mr. Koss and Capital Machine "engaged in a pattern of conduct to deceive the U.S. Patent Office, which conduct has directly led to the issuance of" the patents. *Id*. ¶ 10. Specifically, the defendants allege that Mr. Koss deceived the Patent Office regarding two facts. First, he falsely reported, or caused to be

reported, on the patent applications that defendant Robert Brand was the sole inventor of the patents. Second, he failed to disclose to the Patent Office that the methods and apparatuses for which the applications were filed were offered for sale more than a year before the applications were filed. Mr. Koss does not challenge the sufficiency of or basis for the defendants= allegations that he Awas directly involved in the preparation and prosecution of each of the patent applications,@ Answer, Affirmative Defenses & 4; Adirected and/or controlled what information was supplied to the U.S. Patent Office@ regarding the patents, Answer, Counterclaims & 7; or that he was Aan individual associated with the filing and prosecution of the patent applications,@ *id*. & 8. He argues that the defendants have failed to particularly plead the elements of materiality and the facts supporting the allegation of specific intent. He contends that the defendants have failed to identify which claims of each patent are unpatentable due to the alleged conduct; failed to identify the particular limitations of each claim that are relevant; failed to allege facts supporting an inference of scienter; and failed to allege the falsity of the misrepresented information.

**Inventor misrepresentation.** To support their counterclaim that Mr. Koss intentionally deceived the Patent Office by listing defendant Robert Brand as sole inventor, the defendants rely on statements that Mr. Koss made in a declaration that he filed in the administrative patent-interference proceeding that the plaintiffs instituted against defendant Miller Veneers regarding ownership of the patents in question. Defendants do not cite the specific part or parts of this ASecond Brand Declaration,@ [dkt. 55-1], that show Mr. Koss=s scienter; they only assert that, in the Declaration, Mr. Koss claims to be the sole inventor of the patents.

The Court notes three instances in the Second Brand Declaration where Mr. Koss describes his own contributions to the patents:

10

> **(1)** A. . . I deny that Tom Miller alone conceived the idea of intermittent longitudinally-spaced pockets. As he and I talked in 1991 on the phone, I suggested intermittent grooves in order to strengthen the edges of flitches cut on a staylog,@ (2nd Brand Dec. & 3);
>
> **(2)** A. . . I deny that Tom Miller alone conceived the idea of cutting individual routed pockets shallower than the parallel grooves had been in the past. It was at my suggestion that we test routed shallow pockets to disprove his theory that they >only= way to strengthen the edges or wings was to have a wider base under the flitch . . . ,@ (*id*. & 4); and
>
> **(3)** ATom Miller had always made a point of his belief that the importance of the wide support on the staylog was the main stability for the edges of the staylog. . . . It was my suggestion alone, during tests by Tom and me with a Hitachi router in 1991, to cut shallow pockets to prove that it in fact did not require the support of the bed under the wings. I knew from other experience that flitches sometimes had shallow grooves and that they did not hold as well while cutting. I wanted to see how it would work with the pocket idea. I suspected that the real reason the wings flexed was due to the continuous groove, and not due to the presence or absence of bed support,@ (*id*. & 14).

These statements do not support the idea that Mr. Koss asserted *sole* inventorship of the patents. His statements relate only to the patents= concepts of cutting intermittent, shallow pockets or grooves into the flitches, rather than the traditional continuous, deep grooves, and all for the purpose of countering flitch-edge flexing. Mr. Koss=s descriptions of his contributions do not mention the patents= additional concepts of, *e.g.*, drilled holes, instead of pockets; the use of pins instead of dogs; or the elevation of a tapered flitch on a staylog in order to reduce waste by presenting a parallel cutting surface to the slicing knife. Thus, at most, the counterclaims allege that Mr. Koss misrepresented, or caused to be misrepresented, in the patent applications that Mr. Brand was the sole inventor of the patents, when, in fact, Mr. Koss also should have been identified as a co-inventor.

Mr. Koss neither argued nor cited authority stating that the separate contributions of co-inventors must be identified in a patent application by description and/or by specification of

relevant claims and/or claim limitations. As such, Mr. Koss has not shown that the counterclaims violate Rule 9(b) by failing to identify the specific claims and/or limitations of the patents affected by this instance of Mr. Koss=s alleged inequitable conduct.

However, the counterclaims do fail to adequately demonstrate a plausible claim of materiality. The defendants plead only Mr. Koss=s statements in the Second Brand Declaration as factual support for their counterclaim that he intentionally deceived the Patent Office regarding the patents= inventors. Their contention is that the Declaration is an admission that Mr. Koss was a co-inventor, but this admission fails to support a reasonable inference that Mr. Koss intentionally deceived the Patent Office about a material fact. According to the Federal Circuit, information may be considered material "if there is a 'substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.'" *Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1358-59 (Fed. Cir. 2010). The defendants did not indicate any reason why the patents might not have issued had the patent applications identified Mr. Koss as a co-inventor, and as such they feel to meet the requisite showing of materiality.

Further, the defendants did not suggest any other interest that Mr. Koss might have had to hide his participation in inventing the patents. In this context, the applications= identifications of Mr. Brand as sole inventor are also consistent with, *inter alia*, Mr. Koss honestly failing to recognize his legal status as a co-inventor at the time, deciding in good faith that his contributions were not significant enough for co-inventor status, and/or deliberately deciding to abandoning his status in favor of Mr. Brand. AThe error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as

provided in this section." 35 U.S.C. § 256. Section 256 allows correction administratively by the Patent Office or by a court if "such error arose without any deceptive intent." *Id*. The fact that Mr. Koss later described contributions that he made to some of the conceptions of the patents does not support a reasonable inference that he failed to identify himself as a co-inventor in the patent applications with the specific intent to deceive the Patent Office. Given the heightened pleading standard and lack of materiality, a plausible claim of deceptive intent has not been shown.

The defendants have failed to adequately plead that Mr. Koss engaged in inequitable conduct before the Patent Office by failing to identify himself as a co-inventor in the patent application. Defendants' claim on the inventor issue must therefore be dismissed.

**Failure to disclose invention was on-sale.** A person is not entitled to a patent if "the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ." 35 U.S.C. § 102(b). To determine whether an invention was offered for sale in violation of § 102(b), a district court must examine whether the on-sale product satisfied all the claim limitations of the invention, *i.e.*, whether it "inherently possessed each of the claim limitations." *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1326 (Fed. Cir. 2001). *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1353 (Fed. Cir. 2002) ("The on-sale bar is evaluated on a claim-by-claim basis, so that some claims of a patent may be found to be barred while others are not").

As an individual allegedly associated with the filing or prosecution of a patent application, Mr. Koss had "a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as

defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned." 37 C.F.R. ' 1.56. "[N]o patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct." *Id*. Failing to disclose, with specific intent to deceive the Patent Office, that an invention was on-sale more than one year before a patent application was filed renders the entire patent unenforceable regardless of the fact that specific claims were not involved in the commercialization:

> The burden of proving inequitable conduct lies with the accused infringer. To successfully prove inequitable conduct, the accused infringer must present "evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [PTO]." Further, at least a threshold level of each element – *i.e.*, both materiality and intent to deceive – must be proven by clear and convincing evidence. And even if this elevated evidentiary burden is met as to both elements, the district court must still balance the equities to determine whether the applicant's conduct before the PTO was egregious enough to warrant holding the entire patent unenforceable. Thus, even if a threshold level of both materiality and intent to deceive are proven by clear and convincing evidence, the court may still decline to render the patent unenforceable.
>
> The need to strictly enforce the burden of proof and elevated standard of proof in the inequitable conduct context is paramount because the penalty for inequitable conduct is so severe, the loss of the entire patent even where every claim clearly meets every requirement of patentability.

*Star Scientific, Inc. v. R. J. Reynolds Tobacco, Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008) (citations omitted), *cert. denied*, 129 S.Ct. 1595 (2009). "Absent explanation, the evidence of a knowing failure to disclose sales that bear all the earmarks of commercialization reasonably supports an inference that the inventor's attorney intended to mislead the PTO." *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182, 1193 (Fed. Cir. 1993).

14

The defendants allege that the plaintiffs and/or Mr. Koss offered to sell the patented inventions more than three years before the patent applications were filed, and they again rely on Mr. Koss=s Second Brand Declaration as factual support for their allegation. In the February 2005 Declaration, Mr. Koss makes the following statement:

> . . . I deny that Tom Miller alone conceived the idea of cutting individual routed pockets shallower than the parallel grooves had been in the past. It was at my suggestion that we test routed shallow pockets to disprove his theory that the Aonly@ way to strengthen the edges or wings was to have a wider based under the flitch, as Curry-Miller had insisted we do earlier by making them a special, wider than normal, stainless steel bed for their 125@ staylog. We both used his brother=s green Hitachi plunge router to cut the pockets in some test flitches. As shown in Capital Machine Specification and Price List dated January 13, 1992, . . . Capital Machine even offered the pocket grooving machine for sale to Curry-Miller at about $75,000 and others also in 1991 and 1992 . . . . Only after my accountant, Scott Read, suggested on Saturday, February 24, 1996, in a meeting that included Tom Miller, Scott Read, and me, that the invention might be too good to share with Curry-Miller, did Tom contact his attorney and file a provisional patent application on March 8, 1996.

Second Brand Dec. & 4.[8] The earliest applications by the plaintiffs were filed in May 1995 (>137 and >995 patents). Therefore, if the inventions covered by the patents were on sale in 1991, then 35 U.S.C. ' 102(b) and 37 C.F.R. ' 1.56 were violated. Specific intent to deceive the Patent Office renders the entire patent unenforceable, so it is not necessary for the defendants to specifically plead every claim and limitation that was implicated by the pocket-grooving machine that was on-sale in 1991. Because each patent describes claims including the limitation of a plurality of holes or cavities arranged in a pre-determined pattern on a flitch and, in the Second Brand Declaration, Mr. Koss describes the pocket-grooving machine as accomplishing such a pattern of pockets on a flitch, all six of the plaintiffs' patents are implicated in the alleged

---

[8] The March 1996 provisional patent application prompted the plaintiffs= interference proceeding that awarded ownership of the claims to the plaintiffs.

inequitable conduct.

Also, the materiality of Mr. Koss's failure to disclose is sufficiently pled because, if proved, the commercialization of the patents more than a year before application would render the patents unenforceable by the plaintiffs.

The Second Brand Declaration shows Mr. Koss's knowledge, in 2005, of Capital Machine's offers to sell the pocket-grooving machine as early as 1991. It is a reasonable inference (particularly here at the pleading stage) that he was aware of the offers at the time in light of his position as President and principal shareholder of Capital Machine and his intimate, direct involvement in the development of the pocket-grooving machine and the development of the patented concepts and apparatuses at Capital Machine and Indiana Forge. It is also a reasonable inference that Mr. Koss was likewise aware of the offers at the time that the first patent applications were filed in 1995. Because (1) under 35 U.S.C. ' 102(b), the patents would not have been granted (at least for the claims and limitations specifically implicated by the pocket-grooving machine) if Mr. Koss disclosed or caused to be disclosed the 1991 offers to sell, and (2) Mr. Koss had a personal financial and business interest in the patents being granted, given his position as a principal shareholder and president of Capital Machine, a reasonable inference arises from these facts that Mr. Koss had the specific intent to deceive the Patent Office by not disclosing that the pocket-grooving machine was on-sale more than one year before the earliest patent applications were filed. The Court notes that judgments finding inequitable conduct have been affirmed by the Federal Circuit based on inferential evidence of intent to deceive where the omission was highly material. *See, Pharmacia Corp. v. Par Pharmaceutical, Inc.*, 417 F.3d 1369, 1373 (Fed. Cir. 2005) (quoting *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co*., 204 F.3d

16

1368, 1375 (Fed. Cir. 2000) ("Proof of high materiality and that the applicant knew or should have known of that materiality makes it difficult to show good faith to overcome an inference of intent to mislead.")); *and Critikon, Inc. v. Becton Dickinson Vascular Access, Inc*., 120 F.3d 1253, 1256 (Fed. Cir. 1997) ("The more material the omission or the misrepresentation, the lower the level of intent required to establish inequitable conduct, and vice versa."), *cert. denied,* 523 U.S. 1071 (1998). Easily then, a pleading alleging that highly material facts were withheld can withstand scrutiny because the specific intent to deceive can be reasonably inferred.

Therefore, the defendants have pled with the requisite particularity the counterclaims asserting that Mr. Koss engaged in inequitable conduct before the Patent Office by failing to disclose, with the specific intent to deceive, that the pocket-grooving machine was on-sale more than one year before the patent applications were filed.

**Conclusion**

Mr. Koss=s Motion to Dismiss and Renewed Motion to Dismiss the defendants= counterclaims against him are **granted in part and denied in part**: **(1)** his Rule 12(b)(6) motion is **DENIED** because he is properly named now as a defendant for purposes of the defendants= claim for an award of fees under 35 U.S.C. ' 285; **(2)** his Rule 9(b) motion directed against the allegations that he engaged in inequitable conduct before the Patent Office by misrepresenting the inventors of the plaintiffs= six patents is **GRANTED**; and **(3)** his Rule 9(b) motion directed against the allegations that he engaged in inequitable conduct against the Patent Office by failing to disclose that Capital Machine=s pocket-grooving machine was on-sale more than one year before the plaintiffs= earliest patent applications were filed is **DENIED**. Once the issue of the pending motion to strike Plaintiff's Amended Complaint has been resolved, and when the time for

responsive pleading is ripe, the defendants shall file a revised answer, affirmative defenses, and counterclaims omitting the allegations that Mr. Koss engaged in inequitable conduct by misrepresenting the inventors of the six patents.

**SO ORDERED.**

Date: 08/27/2010

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Cynthia A. Bedrick
MCNEELY STEPHENSON THOPY & HARROLD
cabedrick@msth.com

Clifford W. Browning
KRIEG DEVAULT LLP
cbrowning@kdlegal.com

Courtney E. Curtis
OVERHAUSER & LINDMAN, LLC
ccurtis@overhauser.com

Jennifer M. Frasier
MCNEELY STEPHENSON THOPY & HARROLD
jmfrasier@msth.com

J. Lee McNeely
MCNEELY STEPHENSON THOPY & HARROLD
jlmcneely@msth.com

Paul B. Overhauser
OVERHAUSER & LINDMAN, LLC
poverhauser@overhauser.com

Katherine A. Petralia
MCNEELY STEPHENSON THOPY & HARROLD
kapetralia@msth.com

Deborah   Pollack-Milgate
BARNES & THORNBURG
dmilgate@btlaw.com

Brady J. Rife
MCNEELY STEPHENSON THOPY & HARROLD
bjrife@msth.com