UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| CAPITAL MACHINE COMPANY, INC., and INDIANA FORGE, LLC, | ) |
|---|---|
| Plaintiffs, | ) |
| | ) 1:09-cv-00702-JMS-TAB |
| vs. | ) |
| | ) |
| MILLER VENEERS, INC., et al., | ) |
| Defendants. | ) |

# ORDER

Presently before the Court in this patent infringement action is Miller Veneer, Inc's ("Miller") Motion for Reconsideration of the Court's Order of September 16, 2010. [Dkt. 179.] In the September order, the Court determined that Barnes & Thornburg LLP ("B&T") was disqualified from representing Miller in this action because B&T had previously represented Plaintiff Capital Machine Company ("Capital") on matters that were substantially related to the subject matter of this action. [Dkt. 175.] The motion to reconsider is fully briefed. [Dkt. 180, 184, 189.]

### STANDARD OF REVIEW ON MOTION TO RECONSIDER

As the Court noted in its September order, absent compelling reasons, litigants must come forth with their best arguments and evidence the first go around; "[m]otion practice is not an exercise in trial and error or maybe-maybe not where a party can reserve arguments to present later if earlier ones fail," *Brownstone Publ'g, LLC v. AT&T, Inc.*, 2009 U.S. Dist. LEXIS 25485, *7 (S.D. Ind. 2009). A motion to reconsider is only appropriate where the court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185,1191 (7th Cir. 1990).

Miller spends most of its briefs re-arguing matters it did argue or could have argued in the original briefing or at oral argument. The Court will not treat the issues that fall in that category because they do not pass the rigorous standard governing motions to reconsider.[1] However, the Court did err in the original entry with respect to a particular date, and will correct that typographical error. Given the serious nature of an order disqualifying counsel, the Court also will further elaborate on the reasons why the Court orders B&T to withdraw. Miller also offers new evidence in support of its claim of prejudice that the Court will address. Nevertheless, even after reconsidering the matter, and as qualified above, the Court's earlier ruling will stand.

**ISSUES CONSIDERED**

### I. Correction of erroneous date

In the Court's original entry, it erroneously stated that "from late 2006 to mid-2007 B&T advised Capital about how to better protect its intellectual property and about the potential intellectual property consequences of Mr. Brand's departure." [Dkt. 175 at 6.] The Court now corrects that statement: B&T advised Capital following Brand's departure, and advised Capital about covenants not to compete and revisions to its employee handbook in late 1996 to mid-1997. [Dkt. 155-1 at 6, 9-10.] Accordingly, the Court restates the facts it found to reflect the accurate dates.

On December 26, 1996, when Mr. Brand announced his resignation from Capital, [dkt. 163-5], B&T's time records reflect that current B&T partner Terry W. Dawson had a forty-two minute telephone call with Capital's president, Bill Koss. [Dkt. 155-1 at 6.] The narrative for

---

[1] Miller spends the majority of its original reconsideration brief and reply accusing Capital (and particularly its counsel) of misrepresentations to the Court. Some accusations were raised in the original disqualification opposition, and were addressed at oral argument and in the Court's September order. [*See* dkt. 175 fn. 5.] Because the Court is not relying on those representations, but instead the Koss affidavit and B&T's own billing records, the Court considers those arguments either waived or redundant, and will not address them.

the call indicates that the two discussed an "engineer quitting." [*Id.*] In February 1997, the time records for another B&T attorney named Derek Murphy indicate a brief (six-minute) telephone conference with Capital on preparing a "Covenant Not to Compete." [*Id.* at 9.] In April, Mr. Murphy recorded five-and-a-half hours, among other things, preparing a non-compete agreement "for salesman and engineers employed by Capital Machines," and discussing it with Capital's president. [*Id.*]

Mr. Koss has submitted an affidavit in which he claims that B&T provided Capital with, among other things, "[c]ounseling regarding employment matters generally, and specifically, as they relate to: (a) the ownership of inventions; and (b) Capital's employment relationship with Defendant Robert Brand." [Dkt. 146-1 ¶8.] He goes on to state that B&T also provided advice regarding Capital's "employment contract, which includes provisions regarding ownership of inventions and confidential information." [*Id.* ¶25.]

Neither Mr. Dawson nor Mr. Murphy provided affidavits regarding their version of events memorialized in their time entries.

## II.   Substantially related matters

The Court will reiterate the "substantially related" test governing the disqualification inquiry here, which involves three steps:

(1) Determine the scope of the prior representation;

(2) Ask whether "it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters;" and if so,

(3) Ask whether that confidential information "is relevant to the issues" raised in the present action.

*La Salle Nat'l Bank v. County of Lake*, 703 F.2d 252, 255 (7th Cir. 1983) (citations omitted).

The Court emphasizes that the standard for the second step is whether "it is *reasonable to infer* that the confidential information allegedly given would have been given to a lawyer representing a client in those matters." *Id.* (emphasis added). Miller's motion attacks the credibility of Capital's brief in a manner that does not comport with the second step analysis, and asks the Court to conduct an evidentiary hearing.

Perhaps the reasonable inference standard exists to avoid the evidentiary disputes that have arisen here.

> The "substantial relationship" test has its problems, but conducting a factual inquiry in every case into whether confidences had actually been revealed would not be a satisfactory alternative, particularly in a case such as this where the issue is not just whether they have been revealed but also whether they will be revealed during a pending litigation. Apart from the difficulty of taking evidence on the question without compromising the confidences themselves, the only witnesses would be the very lawyers whose firm was sought to be disqualified (unlike a case where the issue is what confidences a lawyer received while at a former law firm), and their interest not only in retaining a client but in denying a serious breach of professional ethics might outweigh any felt obligation to "come clean."

*Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269 (7th Cir. 1983). Consistent with *Analytica,* the Court denies Miller's – belated – request to conduct an evidentiary hearing.

**A. Representation following Brand departure.**

In its original Entry, the Court focused on B&T's representation of Capital in the wake of the Brand departure as representation from which it is reasonable to infer that B&T received the confidential information alleged by Capital. Koss alleges B&T provided legal services as to "[d]etermining inventorship and ownership of inventions made by Capital employees, including its former employee, Defendant Robert Brand; [p]reparing agreements pursuant to which Capital obtained rights to inventions of its employees…" [146-1. ¶8.] The correction of the dates that

such representation occurred do not alter the Court's earlier findings as to the reasonableness of the inference that such advice was given, and as to the relevancy of the representation to the issues in this case.

### B. Patent representation

Mr. Koss has submitted an affidavit in which he characterizes the nature of the information he gave B&T in the course of its patent representation. [Dkt. 146-1.] B&T does not dispute that it served as patent counsel for Capital in procuring U.S. Patent No. 4,503,896. [Dkt. 180 at 10.] As the Court noted in the September entry, that patent was referenced by Capital in obtaining the patents in suit. Mr. Koss, Capital's President, asserts that he gave B&T confidential information not only about that patent, but also about Capital's future product plans, and an assessment of Capital's competition. [Dkt. 146-1 ¶11.]

The Court finds that it is reasonable to infer that the confidential information alleged to have been given would have been given to a lawyer responsible for procuring the '896 patent. Certainly, the reference to the '896 patent in the patents in suit meets the relevancy standard.

Also, the '896 patent defines the term "dogs." In this case, Miller, and thus B&T, are seeking to have "dogs" construed differently than the term is used in the original patent that B&T prosecuted. [Dkt. 176-2 at 3.] Miller argues this is a "red herring " and asserts that B&T should be able to argue that the term "means one thing in one patent and one in another patent, even where the prior patent was cited as prior art." [Dkt. 180 fn. 4.] But Miller omits a significant fact in its theory about B&T's purported freedom of argument – B&T is making the argument in support of a client in one circumstance and in opposition to that same former client in the second circumstance. Furthermore, the Court is onlyrelying on the "dog" definition to demonstrate relevance, which Miller's theory does not address.

### C. Tax advice & Besse Veners

B&T also advised Capital concerning tax matters during the course of its years-long representation. As recently as 2004, B&T provided advice concerning potentially changing Capital's choice of tax election. [Dkt. 155-1.] B&T also represented Capital during its acquisition of a company called Besse Veneers.. ("Besse"). [*Id.*] Besse was later renamed "Hoosier Veneer." [146-1.]

The Court finds it reasonable to infer that Capital gave B&T confidential information concerning the tax and Besse Veneers representation.

While the relevance of those matters may at first view appear slim, in discovery here Miller requested that Capital produce:

- All state and federal tax returns filed by any business owned in whole or in part or operated by William L. Koss for the last ten (10) years.
- All documents that identify, discuss, or illustrate the methods or machinery used by Hoosier Veneer, LLC
- All advertising or marketing materials sent out by Hoosier Veneer, LLC
- All documents that concern or relate to the profitability, or lack thereof, of Hoosier Veneer, LLC

[Dkt. 146-3.]

Given that it is Miller who sought discovery on these matters, their relevance is either established or else Miller is estopped from disclaiming relevance. The Court presumes Miller could not have legitimately sought discovery on such matters unless they were "relevant to [its] claim or defense." Fed. R. Civ. Proc. 26 (b)(1).

In summary, the Court finds that B&T represented Capital over several decades. The

firm provided an array of services. It obtained a patent for Capital that is noted as prior art in the patents at issue. It provided limited tax advice, and acquisition advice about Besse Veneers. Finally, B&T provided employment law advice and counseled Capital about the implications of Brand's departure with respect to Capital's ownership of its inventions.

All three of the *La Salle National Bank* criteria have been met with respect to any or all of the foregoing matters. The Court again concludes that B&T's representation of Miller is substantially related to its prior representation of Capital.

### III. Prejudice to Miller

Miller presents new evidence to the Court in support of its renewed claim that the disqualification of B&T will result in prejudice to Miller. The Court rejected the prejudice claim in its September ruling, noting that other counsel had been representing Miller for over a year. The Court further noted that B&T had only recently appeared – in August – at which time Capital promptly moved for disqualification after B&T refused to withdraw voluntarily.

Miller now notes that its former (non-B&T) patent counsel has withdrawn, and claims remaining counsel, while experienced litigators in intellectual property matters generally, are not patent counsel.

Further, Miller directs the Court to an email sent by Capital's counsel Paul Overhauser within a half hour of the docketing of the Court's September order. It states:

> Just a heads up, in case Miller Veneers anticipates engaging another patent law firm, please be advised that Capital Machine has had attorney client relationships with Baker & Daniels. Ice Miller and Bose McKinney & Evans, and believes they would be disqualified.

[Dkt. 180-2 at 2.] Miller argues that the email undermines the sincerity of Capital's original motion to disqualify, and instead is a tactic to deprive Miller of the right to retain competent patent counsel. Capital responds to the second point, but offers no explanation

or response to Miller's concerns as to the sincerity of its original motion.

The Court finds that Mr. Overhauser's email indeed smacks of ham-handed gamesmanship. However, based on the foregoing substantive analysis the Court does not find that it undermines the sincerity of the original motion to disqualify. Rather, at worst, it reflects insincerity in the claim of disqualification as to the firms identified. The parties had just undertaken significant briefing on the "substantially related" test. And absolutely no information or explanation as to the nature of the alleged attorney-client relationships with the listed firms was provided, a stark contrast to the lengthy explanations offered by Capital's counsel in the communications with B&T seeking withdrawal before the motion to disqualify was filed.

In any event, the Court can protect Miller's right to obtain competent patent counsel, while preserving Capital's right to prevent confidential information from being used against it by former counsel through the orders that follow below.

## CONCLUSION

The Court, having partially reconsidered its earlier order, and for the reasons stated herein, **ORDERS** that B&T, and all their attorneys, may not represent any adversary to Capital, Indiana Forge or William Koss in this action before this Court, and all B&T attorneys must promptly file motions to withdraw their appearances.

The Court further **ORDERS** all deadlines in the case **STAYED** until December 22, 2010, by which time Miller must have retained patent counsel if it intends to do so. The current CMP is vacated. Within 15 days of patent counsel's appearance, the parties must meet and confer and file a proposed revised CMP based on the Court's Uniform Patent CMP. Magistrate Judge Baker is requested to conduct a status conference upon the filing of the proposed revised CMP. The

trial date may be adjusted based on the revised CMP.

To the extent that Miller's motion to reconsider [dkt. 179] seeks any additional relief, the motion is **DENIED.**

10/22/2010

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Cynthia A. Bedrick
MCNEELY STEPHENSON THOPY & HARROLD
cabedrick@msth.com

Clifford W. Browning
KRIEG DEVAULT LLP
cbrowning@kdlegal.com

Courtney E. Curtis
OVERHAUSER & LINDMAN, LLC
ccurtis@overhauser.com

Jennifer M. Frasier
MCNEELY STEPHENSON THOPY & HARROLD
jmfrasier@msth.com

Donald Robert Lundberg
BARNES & THORNBURG LLP
donald.lundberg@btlaw.com

J. Lee McNeely
MCNEELY STEPHENSON THOPY & HARROLD
jlmcneely@msth.com

Paul B. Overhauser
OVERHAUSER  & LINDMAN, LLC
poverhauser@overhauser.com

Katherine A. Petralia
MCNEELY STEPHENSON THOPY & HARROLD
kapetralia@msth.com

Deborah  Pollack-Milgate
BARNES & THORNBURG

dmilgate@btlaw.com

Brady J. Rife
MCNEELY STEPHENSON THOPY & HARROLD
bjrife@msth.com