UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAPITAL MACHINE COMPANY, INC. and INDIANA FORGE, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 1:09-cv-00702-JMS-DML ) |
| MILLER VENEERS, INC., et al., | ) ) |
| Defendants. | ) |

# Entry Setting Case Management Deadlines and Addressing Expert Deposition Issue

The parties, by counsel, appeared for a telephone conference on September 30, 2011, with the magistrate judge and made arguments on the case management schedule they believe should govern the remainder of this case. The parties have supplemented their arguments with briefs that address both case management and an issue regarding anticipated deposition questioning of an expert witness. For the reasons explained in section A below, the court is entering the Phase II case management order docketed along with this entry. The court addresses the expert deposition issue in section B of this entry.

**A.    Case Management**

On September 14, 2011, the court made its *Markman* ruling, determining the scope and meaning of patent claims disputed by the parties in the six patents-in-suit. (Dkt. 247). The district judge's *Markman* entry requested this magistrate judge to assist the parties in developing a Phase II Uniform Case Management Plan. The parties have reached agreements on many components of the Phase II plan, but they have a fundamental disagreement about the parties' (particularly the defendants') right to disclose new experts or expert opinions on liability issues.

The parties also could not agree on some other relatively minor issues, including a deadline for dispositive motions.[1]

The Uniform Case Management Plan used by most judges in this district for all non-design patent cases provides for Phase II deadlines to be developed after the court's *Markman* decision and measured from the date of that decision. In essence, the usual plan awaits the *Markman* ruling before requiring the parties to make final strategic decisions on important matters, including pursuit of summary judgment on any issues, reliance on expert opinion for summary judgment purposes and at trial, and defense of a claim of willful infringement based on opinion of counsel.

The parties' case management disputes arise in part from the fact that this case had been governed by the *design* patent uniform case management plan that was used for *all* patent cases by the original presiding judge. That plan, entered as an order of the court on September 22, 2009 (at Dkt. 50), managed the case with less emphasis on the *Markman* ruling. It required the parties to brief summary judgment and *Markman* issues simultaneously—and thus to conduct virtually all liability discovery and expert practice in advance of the *Markman* ruling. As a result, once the court issued its *Markman* ruling (and rulings on any summary judgment motions), the parties effectively would need time only for completing damages discovery before being ready for trial. Nevertheless, that plan did allow for the possibility that the *Markman* ruling would alter the landscape and provided that "[i]f required by the Court's *Markman*

---

[1] The parties also disagreed about whether the defendants should be given a renewed opportunity to assert an opinion of counsel defense to willfulness. The issue is moot because, as the defendants confirmed during the September 30, 2011 conference with the magistrate judge, they have not raised and do not intend to raise that defense. Indeed, the court earlier denied certain discovery because of the defendants' representation that they were not raising the defense.

decision, parties can request that supplemental non-damages expert reports and/or additional summary judgment motion practice be added to the CMP."

Even though the non-traditional plan originally governed this case, this litigation has not actually followed the sequencing contemplated by that plan. The parties were not required to brief summary judgment issues simultaneously with *Markman* issues, and summary judgment deadlines have yet to be set by the court.

The change in structure was caused primarily by an issue that led to the disqualification (and replacement) of the defendants' counsel. *Markman* and summary judgment briefing deadlines were extended in the summer of 2010 (*see* Dkts. 94, 98). The court then stayed the *Markman* and summary judgment briefing deadlines altogether on September 9, 2010 (Dkt. 166, Dkt. 185), and halted discovery for a period while the defendants obtained new counsel. (Dkt. 191). On October 22, 2010, the court *vacated* the case management order entered in September 2009 and ordered the parties to meet and confer and file a new plan "based on the Court's Uniform Patent CMP" once the defendants' new counsel entered the case. (Dkt. 191). After vacating the old CMP, the court set deadlines for *Markman* briefing, but it did not enter a schedule for briefing any summary judgment issues. (Dkt. 209). The court also decided, in June 2011, that a "Post-*Markman* Phase II Case Management Plan" would govern the case after the *Markman* ruling. (Dkt. 233). It has taken until today for a new, comprehensive plan to be entered.

The plaintiffs object to a Phase II plan, like the uniform plan used by the now-presiding district judge, which permits the defendants the opportunity to designate any new experts or new expert opinions to be used at trial or for summary judgment liability issues. The plaintiffs assert that they have relied on the defendants being limited to the liability experts they already have

3

identified and for whom reports have been served, and they maintain they would be unfairly prejudiced if the defendants are permitted to expand their defenses. The court finds, however, that the just determination of this case requires adoption of a (more or less) standard Phase II plan.

First, the lynchpin of the plaintiffs' position is a margin entry that denied the defendants' July 2010 motion to specify a time for disclosure of trial experts, as opposed to experts on summary judgment issues—an entry that does not bear the weight the plaintiffs try to load upon it. (*See* Dkt. 138). That margin entry—in which the court invited the parties to confer further to attempt agreement on some relief from the CMP—was entered just before this lawsuit became focused on and stalled by attorney disqualification issues. In addition, it was grounded in the former CMP, which the court later *vacated* in its entry dated October 22, 2010. It was also entered before the court separated *Markman* briefing from summary judgment briefing, and before the court reiterated its decision that a revised CMP should be based on the "traditional" uniform patent CMP.

Second, even the original CMP allowed for the possibility that the nature of the court's *Markman* ruling would support a party's request to supplement "non-damages" expert reports or to make additional summary judgment motions. ("If required by the Court's *Markman* decision, parties can request that supplemental non-damages expert reports and/or additional summary judgment motion practice be added to the CMP.") Given the possibility that a *Markman* decision might change the parties' approach to certain liability issues,[2] it is not reasonable for a

---

[2] The court acknowledges the plaintiffs' argument that because they have steadfastly maintained there are no terms in the six patents that required claims construction by the court, the defendants could not have asserted (under the old CMP) that the *Markman* ruling required a change in their strategy or new or supplemental expert opinion. But the court did not adopt wholesale the defendants' proffered claims construction, and the plaintiffs were not silent about

4

party to rely on an assumption that at the close of *Markman* briefing, no further development of liability issues through discovery and expert practice will be permitted.

Third, even though the discovery efforts undertaken in this case have been, according to the plaintiffs, monumental, the plaintiffs have not provided the court with any basis for believing that any of that discovery was wasted or must be re-done if the defendants are permitted to provide new or supplemental expert disclosures on liability issues. The ability to conduct more discovery will not create undue prejudice here.

Finally, the deadlines in the Phase II Plan now entered as an order of the court are approaching quickly—quickly enough that the court doubts that the defendants will be able to "concoct" entirely new theories and send the plaintiffs "on a wild goose chase" or that this case will turn into a "circus." (*See* plaintiffs' memorandum regarding case management deadlines, Dkt. 255, at p. 8). The court's focus is on permitting the parties reasonable opportunity to prosecute and defend this case on the merits. As the parties will note, the new case management order is virtually identical to the uniform order, with deadlines tied roughly to the date this order is issued.[3] A trial date and final pretrial conference will be set by separate entry.

---

proper claims construction. *See Markman* ruling, Dkt. 247. Several disputes in this case have arisen from the plaintiffs' insistence that no claims required construction, leading to an "I gotcha" argument that the defendants waived a merits issue. That strategy is not persuasive. In the *Markman* ruling, the court rejected the parties' arguments about the other side's waiver of claim construction or acceptance of claim construction by default, preferring to reach the merits so that the court's ability to satisfy its duty to properly instruct the jury would not be needlessly frustrated. Dkt. 247 at p. 4. n.3.

[3] The court notes that the parties' briefing on deadlines under a Phase II CMP also addressed whether the defendants properly can amend their Preliminary Invalidity Contentions. The parties agree that the standard CMP language applies, stating that the defendants may serve Final Invalidity Contentions without leave of court that amend their Preliminary Invalidity Contentions if the plaintiffs serve Final Infringement Contentions or if the defendants "believe in good faith that the Court's Claim Construction Ruling so requires." The plaintiffs insist that neither condition can be met; the defendants disagree. The court declines to enter this fray prematurely and in a vacuum. The parties can address that matter when, and if, the defendants

**B.      Expert Discovery**

The model patent Phase II CMP, which was recently revised in May 2011, contains a section V titled "Other Matters" that invites the parties' agreement whether drafts of expert reports will be retained and produced and whether inquiry will be permitted into "who, if anyone, other than the expert participated in the drafting of" the expert's report. In the absence of agreement on these issues, the model CMP states that drafts do not need to be produced but inquiry may be had into the persons who participated in drafting the expert's report. The model CMP does not expressly acknowledge that new expert disclosure guidelines were adopted in Rule 26(b)(4) effective in December 2010.

In their proposed case management plans, the plaintiffs and defendants agreed that draft reports do not need to be exchanged (a position that is consistent with new Rule 26(b)(4)(B)) but *may* disagree on whether parties should be permitted to inquire about the drafters of the report and the extent of their drafting. The plaintiffs argue that to the extent a person who participated in drafting is a lawyer, then questioning about the extent of the lawyer's participation is not permitted under new Rule 26(b)(4)(C), which limits inquiry about communications between a party's lawyer and the party's expert. The plaintiffs do not contest that inquiry regarding any non-attorney's participation in drafting the expert report is proper. The defendants have not addressed the distinction between lawyer-drafters and others. They observe that the reports served by the plaintiffs' two experts are virtually identical in their language and the defendants should be permitted to find out "which of the experts, if any, prepared the identical report." Lurking within this is the suggestion that neither expert prepared the report, but that it was drafted by the plaintiffs' lawyers.

---

serve Final Infringement Contentions and the parties are aware of the exact nature of the Final Infringement Contentions.

The court agrees with the plaintiffs that to the extent a non-lawyer (such as another expert or assistant to an expert) participated in the drafting of the report, there is no work product limit to inquiring about the scope and depth of those persons' participation in the drafting. The Committee Notes to the 2010 rules revision creating new 26(b)(4)(C) say precisely that: "[I]nquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected by the rule." The court also agrees with the plaintiffs that new Rule 26(b)(4)(C) provides work product protection where, in many jurisdictions, virtually none existed before to protect from disclosure *certain* communications between a party's lawyer and the party's expert. But some communications must be disclosed. As stated in Rule 26(b)(4)(C), communications about the following subjects between a lawyer and the expert must be disclosed:

- (i) those that relate to compensation for the expert's study or testimony;
- (ii) those that identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; and
- (iii) those that identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

If, in fact, an expert's report is merely the lawyer's opinion—such as if the lawyer drafted the report and the expert merely signed it without substantive revision or input, some inquiry into the nature of the lawyer's participation would be appropriate. In those circumstances, questions about "facts or data" or "assumptions" that the attorney provided and the expert relied on could reveal the nature of the lawyer's participation. On the other hand, questioning that attempts to isolate bits and pieces of an expert's report as those where the lawyer acted as the wordsmith or scrivener normally would be prohibited inquiry into the attorney's work product. One need not know who wrote the words in an expert report to formulate questions that reveal in detail whether the facts, assumptions, or opinions expressed in the words are those of the expert or

someone else's, including a lawyer's. *See Metavante Corp. v. Emigrant Savings Bank,* 619 F.3d 748, 762 (7th Cir. 2010), *cert. denied*, 131 S.Ct. 1784 (2011) (purpose of expert report is to provide substance of expert's opinion so that opponent can rebut, cross-examine, offer competing expert if necessary, and otherwise prepare intelligently for trial).

It is not possible in a vacuum to state that one may never determine the role that an attorney played in the preparation of an expert's report. The line is drawn by the rule and is applied to specific facts and circumstances. The court directs the parties to the Committee Notes regarding Rule 26(b)(4)(C) and the scope of communications between lawyer and expert that are fair game for inquiry and those that are not. The court also reminds the parties that to the extent that disagreements arise in the course of a deposition, the parties may contact the magistrate judge by phone to request a ruling.

So ORDERED.

Date: 10/17/2011

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Cynthia A. Bedrick
MCNEELY STEPHENSON THOPY & HARROLD
cabedrick@msth.com

Jennifer M. Frasier
MCNEELY STEPHENSON THOPY & HARROLD
jmfrasier@msth.com

J. Lee McNeely
MCNEELY STEPHENSON THOPY & HARROLD
jlmcneely@msth.com

Paul B. Overhauser
OVERHAUSER & LINDMAN, LLC
poverhauser@overhauser.com

Brady J. Rife
MCNEELY STEPHENSON THOPY & HARROLD
bjrife@msth.com

Michael A. Swift
MAGINOT MOORE & BECK LLP
maswift@maginot.com